UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

v.                                                            Case No. 19-cr-20515
                                                                  Hon. Mark A. Goldsmith

D-1 JAMIE LAMAR,

        Defendant.
_____/

**OPINION & ORDER
REVOKING DEFENDANT'S BOND**

Defendant Jamie Lamar has been charged with (i) conspiracy to distribute 50 grams or more of a methamphetamine, in violation of 21 U.S.C. § 846; (ii) distribution of 50 grams or more of methamphetamine, in violation of 21 U.S.C. § 841; (iii) possession with intent to distribute 500 grams or more of methamphetamine, in violation of 21 U.S.C. § 841; and (iv) possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c). Superseding Indictment (Dkt. 23). Lamar was released on bond pending trial (Dkt. 7). Pursuant to the terms of Lamar's pretrial release, she cannot travel outside of the Eastern District of Michigan unless she first obtains consent to do so from the United States Pretrial Services. Id. After learning that Lamar had traveled outside of the District without obtaining consent, Pretrial Services Officer David Nicoloff petitioned the Court for action on conditions of Lamar's pretrial release (Dkt. 51). Having held a bond review hearing, the Court now concludes that Lamar's bond should be revoked.

**I. BACKGROUND**

According to Officer Nicoloff's petition, he was notified in late July 2021 by a Wayne County Airport Investigator that flight records showed that Lamar had traveled outside the District on five occasions in June and July 2021. Petition at 1. During the bond review hearing, Lamar conceded

1

that she had traveled out of state on five occasions in June and July 2021—to California, Alabama, Florida, and Georgia—without first obtaining consent to do so. 8/4/21 Hr'g Trans. at 7 (Dkt. 58). However, Lamar insisted that she had a legitimate reason for traveling without permission. Specifically, Lamar testified that her boyfriend was murdered in February 2021, and since then she has been chased down and has received death threats; thus, she claims to have left Michigan for her safety. Id. at 7–8. Further, Lamar testified that she informed Officer Nicoloff of the threats against her and asked the officer for permission to relocate to Georgia, where her aunt resides. Id. at 8.

Officer Nicoloff testified that Lamar had told him that people were "after her" but not that there was a "hit on her life." Id. at 11. He also testified that Lamar asked if she could move to Georgia and provided Officer Nicoloff with her aunt's information. Id. at 11. However, Lamar never followed through on her request to relocate to Georgia; Officer Nicoloff asked her several times whether she was going to move and she always said, "not now." Id. Moreover, Lamar never requested permission to travel to Georgia, and Officer Nicoloff never approved any travel to Georgia. Id.

Assistant United States Attorney Timothy McDonald stated on the record that he verified that Lamar's boyfriend was murdered. Id. at 15. However, he was unable to verify whether Lamar received any threats to her life. Id.

Lamar produced a copy of a March 4, 2021 incident report that she had filed with the Detroit Police Department indicating that two men armed with guns had chased her out of a car that she was driving, causing her to abandon her purse and phone in the car. See 3/4/21 Incident Report at 2 (Dkt. 61-1). The police officer who took Lamar's statement noted that Lamar was able to use the "find my iPhone app" to identify the location of her car (where she left her phone) after running away from it; Lamar's phone was recovered from the driver's seat. Id. The police officer also noted that Lamar was "unsure of the exact details of the event" and "was not able to provide [an] accurate location of

2

the incident." Id. Lamar did not inform the police officer of her belief that this incident was connected to her boyfriend's murder. See id. Nor did Lamar ever otherwise communicate the alleged threats to her life to law enforcement. See 8/4/21 Hr'g Trans at 14–15.

## II. ANALYSIS

The Court's analysis is governed by 18 U.S.C. § 3148. Pursuant to § 3148(a), "[a] person who has been released under section 3142 of this title, and who has violated a condition of his release, is subject to a revocation of release, an order of detention, and a prosecution for contempt of court." 18 U.S.C. § 3148(a). As relevant here, a judicial officer "shall enter an order of revocation and detention" if the judicial officer (i) finds that there is clear and convincing evidence that the person has violated a condition of release; and (ii) finds that either (a) based on the factors set forth in 18 U.S.C. § 3142(g), there is no condition or combination of conditions of release that will assure that the person will not flee or pose a danger to the safety of any other person or the community, or (b) the person is unlikely to abide by any condition or combination of conditions of release. Id. § 3148(b).

Lamar does not dispute that there is clear and convincing evidence that she violated the condition of her pretrial release prohibiting her from traveling outside the District without first obtaining consent from Pretrial Services. Thus, the Court only considers (i) whether there is any condition or combination of conditions of release that will assure that Lamar will not flee or pose a danger to the safety of others in the community, and (ii) whether Lamar is likely to abide by such condition or conditions of release.

### A. Whether There are Conditions That Assure That Lamar Will not Flee or Pose a Danger to Others

To make the first determination, the Court considers the factors set forth in § 3142(g), which include: (i) the nature and circumstances of the offense charged, including whether the offense involves a firearm; (ii) the weight of the evidence against the person; (iii) the history and characteristics of the person; (iv) the nature and seriousness of the danger to any person or the

3

community that would be posed by the person's release. 18 U.S.C. § 3142(g). Each of these factors weighs in favor of revoking Lamar's bond.

First, the nature and circumstances of the offenses charged include substance offenses. Thus, by Congressional decree, the nature of the offense indicates a strong threat to society. United States v. Stone, 608 F.3d 939, 947 n.6 (6th Cir. 2010) (affirming pretrial detention of run-of-the-mill drug dealers, even without an indication that the defendant has engaged in violence). The offenses charged also include a firearm offense, which indicates that Lamar either did engage or was prepared to engage in violence in furtherance of her drug-trafficking activities.

Second, the weight of the evidence against Lamar reflects her dangerousness. Lamar sold methamphetamine to undercover agents. See Complaint ¶ 3 (noting that the DEA conducted at least two controlled purchases involving Lamar). Further, during the execution of a search warrant at Lamar's home, law enforcement agents discovered a purse containing a large amount of methamphetamine, and a gallon-sized zip lock bag containing a large amount of methamphetamine. See id. ¶¶ 4–6. As a result, Lamar is charged with, among other things, selling 50 grams or more of methamphetamine and possessing with intent to distribute 2000 grams of methamphetamine. Methamphetamine is classified as a Schedule II drug due to its high potential for abuse, with use potentially leading to severe psychological or physical dependence.[1] The circulation of such drugs in the community is, therefore, highly dangerous.

Third, Lamar's history and characteristics warrant detention. A defendant's relevant history and characteristics include the defendant's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court

---

[1] United States Drug Enforcement Administration, "Drug Scheduling," https://www.dea.gov/drug-information/drug-scheduling [https://perma.cc/5JF5-WNGB].

proceedings. 18 U.S.C. § 3142(g)(3)(A). This is not Lamar's first substance offense. Rather, her prior criminal history includes an arrest in California for bringing controlled substances into prison and a conviction in Michigan for possession of marijuana. Further, Lamar holds no legitimate employment. Despite Lamar's lack of a regular, legitimate income, she has flown to California, Alabama, Georgia, and Florida in the last three months. Lamar also appears to have a history of personal drug use. According to Officer Nicoloff, Lamar tested positive for marijuana in January 2020. 8/4/21 Hr'g Trans. at 10–11.

Fourth, the community would be endangered by Lamar's release. Lamar appears to contend that she violated her pretrial release terms due to valid safety concerns and, therefore, she is not dangerous. See Def. Proposed Findings of Fact and Conclusions of Law at 4 (Dkt. 61). The Court is not persuaded that Lamar traveled outside of the District due to her safety concerns. Each time that Lamar left Michigan, she returned a short time later. If Lamar had really feared for her life, it seems that she would not have returned to Michigan, let alone return on multiple occasions. Her repeated travels back and forth without a valid explanation—and during a pandemic when many people are fearful of engaging in casual travel—are at the very least suspicious in nature and consistent with the Government's contentions in this case that she has been part of a drug trafficking conspiracy and a danger to the community. See, e.g., United States v. Hinton, 113 F. Appx. 76 (6th Cir. 2004) (affirming pretrial detention of defendant charged with unspecified drug trafficking offenses); United States v. Ortiz, 71 F. Appx. 542 (6th Cir. 2003) (affirming pretrial detention of defendant charged with conspiracy to distribute and possess over five kilograms of cocaine). Lamar's dangerousness is magnified by her possession of an assault-style rifle, ostensibly present to protect the large quantity of drugs in her possession.

B. Whether Lamar is Likely to Abide by Conditions of Release

The Court further finds that Lamar is unlikely to abide by any condition or combination of

conditions of release. She repeatedly violated the pretrial release condition that prohibits her from leaving the District without first obtaining consent from Pretrial Services by taking flights to other states on multiple occasions during June and July 2021 until her violations were detected. This shows that Lamar is a flight risk and that she should only remain released on bond pending trial if she is likely to abide by conditions designed to assure her appearance in Court. However, the fact that Lamar has repeatedly violated her travel restrictions shows that she is unlikely to abide by any conditions that can assure her appearance in Court.

Lamar contends that she should be permitted to live with her mother and that "[i]f further travels are needed, the Court can impose conditions for her to report any necessary travel to the Court or Pretrial Services." Def. Proposed Findings of Fact and Conclusions of Law at 5. In other words, Lamar asks the Court to weaken her pretrial release conditions by merely requiring her to report travel to Pretrial Services rather than obtaining Pretrial Services' consent to travel before doing so. Such a condition would not help to assure Lamar's appearance in Court. Further, Lamar's past violations render it highly unlikely that she would comply with such a condition. While Lamar suggested to Officer Nicoloff that she might want to move to Georgia, she never followed up on this request, and she never once reported her travels to him.

### III. CONCLUSION

For the foregoing reasons, the Court revokes Lamar's bond. It is ordered that Lamar shall be detained pending trial. No later than September 29, 2021, Lamar shall contact Pretrial Services and make arrangements to report to the custody of the United States Marshals Service. Lamar shall report to the custody of the United States Marshals Service no later than September 30, 2021. Failure to

report as directed will result in a warrant being issued for Lamar's arrest.

    SO ORDERED.

Dated: September 27, 2021        s/Mark A. Goldsmith
Detroit, Michigan              MARK A. GOLDSMITH
                                      United States District Judge

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on September 27, 2021.

                                        s/Jennifer McCoy
                                        Case Manager